United States District Court

For The District of Columbia

FILED

JUL 1 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

United States of America

v.

Case No. 06-MJ-0006 ("FF-JMF")

Lynn Robinson, appellant

Appeal Brief for Appellant Lynn Robinson, Defendant Pro Se

Appellant Lynn Robinson respectfully submits this brief urging reversal of the judgment of Magistrate Judge John Facciola, entered on December 21, 2005, finding appellant guilty of demonstrating without a permit, in violation of 36 C.F.R. & 7.96 (g) (2).

I was arrested by the Park Police on September 26, 2005, in front of the White House, with over 370 other people from all over the country. You may recall this anti-war protest in that it involved Cindy Sheehan attempting to deliver a petition signed by thousands of people against the war. No one at the White House would speak with her, or even accept her petition.

We were tried in three groups, by three different judges in the United States District Court. Two of the groups were convicted and told to pay fines and processing fees. The last group was convicted and sentenced to time served. The charge was demonstrating without a permit at the White House in violation of 36 Code of Federal Regulations. We had an attorney-advisor, Mark Goldstone, who helped us with this case, but we did not have adequate funds to pay for appeals. Although I am indigent, I was unable to get a copy of the transcript of my trial, and it took many, many phone calls to get the information needed to obtain them. After raising funds, we were able to obtain paper copies of all three transcripts by July 11. That did not give us much time to read them or secure assistance for our appeals.

Those of us who are appealing, feel that our right to free speech, and to petition our

government, was denied on September 26 when we attempted to peacefully petition the Government. We feel strongly that the right to petition should supercede the need for a permit. The permit requirement, as we learned in court, is designed to allow public space to be appropriately apportioned among various interests, and to provide safety and security for all persons. Since the police were told ahead of time the nature and numbers of our group, in effect all the purposes of a permit were met, except for the formality. In Court it was clear that they meant to charge us with being stationary and not moving in front of the White House center gate, but for whatever reason, they prosecuted on a theory of "no permit."

As the Court is aware, the demands for permits are not uniformly applied, and some forms of speech are approved, and others are not (as seen in the World Bank/IMF protests in Seattle and Miami). Also, prosecution for demonstrating without a permit appears selective: some people have the charge dropped, or no paperwork filed for their arrests.

While the prosecutors spent a lot of time defining "demonstrating", which included a petition to the Government, they did not establish that we "intended" to break the law, or that we were even aware of the need for, or whether, the group had obtained a permit.

Since the "First Amendment Rights and Police Practices Act of 2005" became law in DC, it appears to offer petitioners little comfort, in that its application appears arbitrary to petitioners. The reason is that we have certain protections such as not needing a permit when on DC property, and then when we step onto federal property, we lose these rights. And rarely is there notice or signage to inform you when you are on DC or when you are on Federal property. During this particular day, we marched from DC property where we enjoyed freedom from arbitrary permit requirements onto Federal property where we lost our rights without knowledge or notice

In Court it was determined that a permit had been issued, but it not clear that this permit had been legally revoked.

36 C.F.R. & 7.96 (g) (2) infringes on our right to free speech because the limit of 25 people is arbitrary and denies any above that number equal protection.

36 C.F.R. & 7.96 (g) (2) makes drawing a crowd a criminal offense.

The maximum penalty for demonstrating without a permit, 6 months in jail and a $500 fine, along with a permanent adult criminal conviction is excessive punishment, and criminalizes our first amendment rights.

On April 19, 2006, four people arrested on October 26 for demonstrating without a permit were acquitted. During the trial, it was clear that the permit statue regarding the White House sidewalk was confusing not only to those arrested, but even to the Park Police.

On September 26, the Park Police had set up what amounted to an exclusion zone. I was not arrested on the sidewalk, but on Pennsylvania Avenue. My arresting officer did not see me or what I was doing, prior to having his photograph taken with me. We were not told why we were being arrested, and did not see the charge until we received what was essentially a parking ticket.

Chief Judge Thomas F. Hogan, I have three friends whose children have died in Iraq. It was their children I was thinking of, while I was in front of the White House, hoping that all or some of us could meet and be heard by someone on the White House staff. And I was thinking of all the carnage we have inflicted on people who had nothing to do with the crime of September 11, 2001.

I thought of the funeral service of a young woman who was like a sister to my son. She died on September 11 on Flight 93. She called her stepmother from the plane, and knew she was going to die, and sent a message of love to her dad and little brother and sister. She felt she

should be saying something. Her stepmother told her it was okay to be silent. So they were silent together, over the cell phone, until she said she had to go because they were going to the cockpit now. At her memorial service, the whole service was for peace and reconciliation, not for war in her name or our name. Her memorial service was on her birthday. And that was the day President Bush started bombing the people of Afghanistan.

Chief Judge Hogan, I thought of my relatives who served in the First Iraq war, and in this Iraq war, and the hardships on them and their families. One, who served recently in Guantanamo Bay, commented, "You will not believe what is happening there."

I thought of how 9/11 was blamed on "faulty intelligence." And how intelligence President Bush knew was faulty was used to justify the invasion of Iraq.

Chief Judge Hogan, we have tried many other ways to end the carnage in Iraq without risking arrest, and continue to try them. But we can not wait for politicians to end this war. According to the Nuremberg principals, we, the people, must end this carnage. And we must to do so by any peaceful means necessary. My actions were protected by the first amendment since we were peacefully gathering around the White House sidewalk and attempting to petition our government.

Conclusion: The Court should reverse the judgment of conviction.

Respectfully submitted,

*I reference Max Obuszewski, Appellant Pro Se (please include me in his brief as well)*

Lynn Maxine Robinson

July 17, 2006